UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CORIAN JONES,

        Plaintiff,

v.   Case No. 3:23-cv-926-MMH-PDB

T. LAMB, et al.,

        Defendants.

_____

# ORDER

## I.   Status

Plaintiff Corian Jones, an inmate of the Florida Department of Corrections (FDC), initiated this action by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1) under 42 U.S.C. § 1983. He seeks to proceed against eighteen Defendants in their individual capacities only: (1) Warden T. Lamb; (2) Warden D. Allen;[1] (3) Assistant Warden K. Tomlinson; (4) Secretary of the FDC, Ricky Dixon; (5) Dr. Jessica Punty; (6) Dr. K. Dones; (7) Captain Hughes; (8) Lieutenant T. Watson; (9) Lieutenant Johnson; (10) C.O. Wiggins; (11) C.O. Mattox; (12) C.O. Trester; (13) Sergeant Rulevitch; (14)

---

[1] It appears there was a change in Warden while Jones was housed at Union Correctional Institution (UCI). See Complaint at 16. Jones currently is housed at Santa Rosa Correctional Institution. See FDC Offender Information Search, available at https://fdc.myflorida.com/OffenderSearch/Search.aspx (last visited Apr. 10, 2024).

Lieutenant R. Weems; (15) Sergeant Stockling; (16) Captain Michael Brown; (17) C.O. Cotton; and (18) C.O. Dean. See Complaint at 1-2, 5-10.[2]

## II.  Complaint Allegations

Jones's Complaint is not a model of clarity. He seemingly seeks to proceed on various claims under the First and Eighth Amendments, including retaliation, deliberate indifference, excessive force, denial of medical care, and cruel and unusual punishment. Id. at 11, 14. He also purports to proceed on a claim under the RLUIPA[3] for an alleged denial of his right to freely practice his religion. Id. at 13. Jones sets forth his factual allegations first in a diary-like fashion in section II.D of the Complaint Form, and again in numbered paragraphs in section IV, labeled "Statement of Claim." Id. at 11, 14.

Jones's purported claims arise out of events that occurred at UCI between August 2, 2022, and March 8, 2023. Id. at 11. He asserts that he incurred a false disciplinary report (DR) on August 2, 2022, when Defendant Watson and another officer claimed to have found a weapon in his cell. Id. at

---

[2] Jones lists the Defendants three times in his Complaint, but in two lists, he names only seventeen Defendants. He omits Defendant Hughes from one list and Defendant Rulevitch from another. See Complaint at 1-3, 5-10.

[3] The Religious Land Use and Institutionalized Persons Act (RLUIPA) provides, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

12, 14. According to Jones, he put the supervisory Defendants (the Warden, the Assistant Warden, and the Secretary) on notice of the "incorrect rule violation" by filing grievances, but they "failed to correct the error." Id. at 12.

Jones alleges that, after finding the weapon, Defendants Watson and Weems cuffed him behind his back despite knowing he had a right arm injury, which made behind-the-back cuffing painful and uncomfortable. Id. Jones's classification officer later advised him he would be suspended from outdoor recreation for 15 days because of the DR. Id. at 14. However, according to Jones, Defendants Trester and Wiggins denied him outdoor recreation on certain dates after the suspension period allegedly expired on August 17, 2022. Id. at 14-15.

It appears Jones incurred another DR in January 2023. Id. at 17. He asserts that Defendant Weems falsified two "grievance log[s]"—one saying that Jones refused to cuff up for a cell search, and another saying that Jones used his mattress to block chemical agents from entering his cell. Id. He further asserts that Defendant Weems thereafter placed him on 72-hour property restriction, during which time he allegedly was denied "basic human needs," including medications. Id.

With respect to medical care, Jones alleges Defendant Punty would not issue him a front-cuff pass in January 2023, even though Jones believed his

3

right arm injury qualified him for an exception to the behind-the-back cuffing policy; Defendant Dones stopped prescribing Jones his psychiatric medication apparently because Jones refused to come out of his cell when officers would not permit him to be cuffed in the front;[4] and Defendant Rulevitch denied him his mental health callouts on various dates in September and October 2022. Id. at 12, 15-17.

With respect to his religious practice, Jones asserts that Defendants Warden Allen and Secretary Dixon violated the RLUIPA by not permitting him to grow out his hair or eat certain foods. Id. at 12-13. Jones does not explain or elaborate upon the alleged violation as it relates to his food. As to his hair length, Jones concedes the FDC has a compelling interest in requiring that inmates keep their hair short (for hygienic and security reasons), but he contends the hair-length policy should not apply to him because he can purchase shampoo to prevent lice or scabies, he is not associated with a prison gang or terrorist group, and corrections officers can use metal detectors to search for items hidden in an inmate's hair. Id. at 13.[5]

---

[4] Jones does not identify the medication, the medical condition or diagnosis, the date of the alleged incident, or state how long he was without the medication. See Complaint at 12.

[5] Jones also baldly asserts that the policy is applied in a discriminatory manner because it does not apply to transgender inmates. See Complaint at 13. It is unclear whether Jones is seeking to pursue an equal protection claim for this and also because Defendant Rulevitch allegedly discriminated against him on January 26, 2023, when

4

Jones also complains of the following additional conduct that he apparently believes are violations cognizable in a Civil Rights action: on August 23, 2022, Defendant Watson put him (Jones) and an inmate with a different housing status in one cell together, apparently in violation of prison policy; on August 25, 2022, Defendants Wiggins and Mattox "[could] be heard . . . verbally plan[ning] to physically assault [Jones]"; on August 30, 2022, Defendant Watson said to Jones, "f*ck you, Nigger"; on August 31, 2022, Defendant Wiggins violated both federal policy (by spitting tobacco (dip) into a water bottle) and department policy (by being out of his "class-A uniform in a professional setting"); on September 19, 2022, Defendant Wiggins, while wearing a "gang bandana tied around his head . . . line danc[ed] around like he was at a 'K.K.K.' meeting"; on January 4, 2023, Defendant Hughes denied him a shower; on January 10, 2023, Defendants Dean and Cotton would not permit him to use the dayroom; for three days in January 2023, Defendant Cotton would not permit him to use the phone; on January 18, 2023, and January 25, 2018, Defendant Stockling denied him a shower; on January 18, 2023, Defendant Dean gave him the wrong mail; and on January 20, 2023, Defendant

---

Rulevitch cuffed a white inmate in the front rather than the back, even though the white inmate had no visible injuries or a front-cuff pass. See id. at 17. Regardless, claims arising out of these separate incidents may not properly be joined in one complaint, as discussed later in this Order.

5

Johnson threatened to use force against him if he did not comply with orders to cut his hair. Id. at 12-17.

Finally, with respect to alleged retaliation, Jones asserts that Defendant Brown authorized him to be disciplined for a "spoken threat" on September 7, 2022, apparently because Jones submitted a grievance about Defendant Watson. Id. at 12, 15.[6] Jones does not describe the subject or content of the grievance, nor does he say why he believes Defendant Brown retaliated against him for having written a grievance about someone else. See id.

In Section II of the Civil Rights Complaint Form, labeled "Basis for Jurisdiction," Jones identifies the following purported claims against all Defendants: retaliation; falsification of records; denial of medical care; excessive force; cruel and unusual punishment; deliberate indifference; denial of due process; violation of the free practice of religion; discrimination; and denial of privileges, such as recreation, showers, and the use of the phone or dayroom. Id. at 6. And in a one-paragraph section Jones himself labels, "Cause of Action," he again lumps together all Defendants, contending they "enticed deliberate indifference when they violated due process of law and further committed act [sic] of corruption under the color of law." Id. at 22.

---

[6] In his Complaint, Jones mentions multiple other grievances he purportedly filed between 2022 and 2023, but it appears he does so only to show that he put supervisors on notice of alleged or perceived violations of his rights. See generally id.

6

In section V of the Civil Rights Complaint Form, labeled "Injuries," Jones asserts only that he re-injured his right arm from being cuffed behind the back for extended periods (he does not say by whom), and because Defendant Punty would not issue him a front-cuff pass. Id. at 20. He does not attribute injuries to any other conduct or Defendant. See id. As relief, he seeks a declaratory judgment stating that Defendants violated his constitutional rights, compensatory damages, and punitive damages. Id. at 20-21.

### III. Standard of Review

The Prison Litigation Reform Act (PLRA) requires a court to dismiss a complaint at any time if the court determines it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A. "A claim is frivolous if it is without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing Battle v. Cent. State Hosp., 898 F.2d 126, 129 (11th Cir. 1990)). A complaint filed in forma pauperis that fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous.[7] Neitzke v. Williams, 490 U.S. 319, 328 (1989). A court should order a § 1915(e)(2)(B)(i) dismissal only when the plaintiff pursues legal theories that are "indisputably meritless," id. at 327, or

---

[7] Jones is proceeding as a pauper. See Order (Doc. 7).

7

relies on factual allegations that are "clearly baseless," Denton v. Hernandez, 504 U.S. 25, 32 (1992). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" Bilal, 251 F.3d at 1349 (quoting Neitzke, 490 U.S. at 328).

Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. Id. As to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), and therefore courts apply the same standard in both contexts.[8] Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

While "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action,'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011) (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th

---

[8] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

8

Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010)); Freeman v. Sec'y, Dept. of Corr., 679 F. App'x 982, 982 (11th Cir. 2017).[9]

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam). Moreover, under Eleventh Circuit precedent, to prevail in a § 1983 action, a plaintiff must show "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted); Porter v. White, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

More than conclusory and vague allegations are required to state a cause of action under § 1983. See L.S.T., Inc., v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).

---

[9] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

As such, "'conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.'" Rehberger v. Henry Cnty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (citation omitted). In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, Jones cannot sustain a cause of action against the Defendants.

A civil rights complaint must include a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). While not required to include detailed factual allegations, a plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Indeed, a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). A plaintiff must allege sufficient facts "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A plaintiff may set forth only related claims in one civil rights complaint; he may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). As recognized by the Eleventh

Circuit, "a claim arises out of the same transaction or occurrence if there is a logical relationship between the claims." Constr. Aggregates, Ltd. v. Forest Commodities Corp., 147 F. 3d 1334, 1337 n.6 (11th Cir. 1998) (quotations and citation omitted).

## IV. Analysis

Jones's Complaint fails to comply with federal pleading standards in that it is both too broad and too vague: he joins multiple, unrelated claims and Defendants; he does not specify which claim or claims he seeks to bring against each of the eighteen named Defendants but rather lumps together all Defendants when listing his purported claims; he makes conclusory and vague allegations, yet also includes allegations that have no obvious connection to any claim; and he does not specify the injuries each Defendant's actions or omissions allegedly caused him.[10] In this regard, Jones's Complaint constitutes an impermissible "shotgun pleading."

A "shotgun pleading" is one that fails to give the named defendants "adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Bch. Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015). See also Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 905 (11th Cir. 1996) (describing a "shotgun pleading" as one that is "framed in

---

[10] This Order is not meant to address every deficiency in the Complaint.

11

complete disregard of the principle that separate, discrete causes of action should be [pled] in separate counts"). Aside from the RLUIPA claim, Jones does not directly specify which claim or claims he seeks to pursue against each of the eighteen Defendants based on each Defendant's conduct. As presented, the Court is unable to determine whether Jones states a plausible claim against any Defendant, and it would be nearly impossible for any Defendant to file a cogent responsive pleading. Sifting through Jones's Complaint to separate potentially plausible claims from frivolous ones would require the Court to expend scarce judicial resources—more than it already has. The Court will not craft a viable complaint for Jones. See Barmapov v. Amuial, 986 F.3d 1321, 1328 (11th Cir. 2021) (Tjoflat, J., concurring) ("[D]istrict courts are flatly forbidden from scouring shotgun complaints to craft a potentially viable claim for a plaintiff."). As such, Jones's Complaint will be dismissed without prejudice with leave to amend.

If Jones chooses to submit an amended complaint, he may proceed only on one claim or related claims that properly may be joined under Rule 20 and that are plausible and cognizable under § 1983. Jones may not join multiple, unrelated claims, nor should he include extraneous or unrelated facts. Any claims Jones wants to pursue that arise out of incidents involving different prison officials on different days should be filed in a separate complaint. See

Skillern v. Ga. Dep't of Corr. Comm'r, 379 F. App'x 859, 860 (11th Cir. 2010) (holding the plaintiff's claims could not be joined under Rule 20 where he alleged all defendants, at different times and under different circumstances, violated his Eighth Amendment rights).

Jones's amended complaint must comply with federal pleading standards and the instructions in this Order and be presented on the Court's Civil Rights Complaint Form. Specifically, in section II of the Civil Rights Complaint Form, labeled "Basis for Jurisdiction," Jones must identify which federal constitutional or statutory right he claims each Defendant violated, and in the section labeled, "Statement of Claim" (section IV), he must plainly and clearly describe how each Defendant was involved in each alleged federal constitutional or statutory violation. He should not merely list a series of legal principles or constitutional protections followed by a diary-like explanation of random and unrelated events that span months. In section V, labeled "Injuries," Jones should clearly state how each Defendant's action or omission injured him.

Additionally, if he chooses to amend, Jones should keep in mind the following legal principles. First, liability under § 1983 may not be premised on a theory of vicarious liability. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701

13

(11th Cir. 2010). See also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) ("It is axiomatic, in [§] 1983 actions, that liability must be based on something more than a theory of respondeat superior."). For instance, "filing a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." Jones v. Eckloff, No. 2:12-cv-375-Ftm-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) (citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)). To establish individual liability for supervisory conduct, a plaintiff must show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." Keith v. DeKalb Cnty., 749 F.3d 1034, 1047-48 (11th Cir. 2014).

> Causation "may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." Id.[11] (alterations adopted) (internal quotation marks omitted). "A plaintiff can also show that the absence of a policy led to a violation of constitutional rights." Piazza,[12] 923 F.3d at 957. "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." Id. (citation

---

[11] Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999).

[12] Piazza v. Jefferson Cnty., 923 F.3d 947 (11th Cir. 2019).

> omitted). And allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the conduct involves several subordinates. Id. at 957-58.

Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022).

Second, to state a claim for deliberate indifference to a medical condition, a plaintiff must allege he had a serious medical need of which the defendant was aware. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). A plaintiff also must "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference" to that serious medical need. Richardson, 598 F.3d at 737. When an inmate has received medical care in prison, the inmate must do more than allege the care provided was "subpar or different from what [he] want[ed]." Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266 (11th Cir. 2020). Moreover, alleging "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a constitutional claim under § 1983. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Indeed, "federal courts are generally reluctant to second guess [prison physicians'] medical judgments." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985). The Eleventh Circuit has instructed that "[m]edical treatment violates the [E]ighth [A]mendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to

fundamental fairness.'" Harris, 941 F.2d at 1505. As such, allegations of medical negligence do not satisfy the stringent deliberate indifference standard. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Third, to state a plausible claim that his conditions of confinement violated the Eighth Amendment, an inmate must allege the named defendant was deliberately indifferent to conditions that were "sufficiently serious." See Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004). Conditions of confinement are sufficiently serious to violate the Eighth Amendment only if they are so extreme that they expose the prisoner to "an unreasonable risk of serious damage to his future health or safety." Id. at 1289. Allegations of merely harsh conditions or verbal threats do not state a plausible claim under the Eighth Amendment. Id. See also Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008). Notably, 72-hour strip status is not a prison condition that is so extreme as to expose an inmate to a "substantial risk of serious harm." Woodson v. Whitehead, 673 F. App'x 931, 932 (11th Cir. 2016). See also O'Connor v. Kelley, 644 F. App'x 928, 932 (11th Cir. 2016) (holding the prisoner failed to state the conditions of his confinement were cruel and unusual when he was placed on strip status for weeks).

Fourth, "[u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied in a good faith effort to maintain or

16

restore discipline [and not] maliciously and sadistically to cause harm." Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (second alteration in original) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009). For instance, a corrections officer may use chemical agents on an inmate without violating the Eighth Amendment "when [such force is deemed] necessary to restore order." Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008) ("Pepper spray is an accepted non-lethal means of controlling unruly inmates."), overruled in part on other grounds as recognized by Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010).

Fifth, an inmate does not have a constitutional right to be free from false accusations by prison officials and generally may not challenge a DR in a civil rights action unless the DR has been overturned or expunged, even if the inmate alleges the DR was false or baseless. Edwards v. Balisok, 520 U.S. 641, 648 (1997) ("[A] claim for declaratory relief and money damages, based on allegations . . . that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983."). See also Wagner v. Smith, No. 5:06-cv-11-MCR-EMT, 2006 WL 2482782, at *3 (N.D. Fla. Aug. 25, 2006) ("[T]he filing of false disciplinary charges against an inmate does not alone amount to a constitutional violation."). Relatedly, a prison official's failure to follow state

law or internal prison regulations does not give rise to a federal constitutional claim under § 1983. Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000).

Sixth, to state an actionable claim for retaliation, a plaintiff must allege that he engaged in "constitutionally protected" speech, he "suffered adverse action" because of that speech, and there is a causal connection between the speech and the adverse action. O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011).

Finally, the "RLUIPA does not authorize claims for monetary damages against prison officials in their individual capacities." Davila v. Marshall, 649 F. App'x 977, 980 (11th Cir. 2016).

## V. Conclusion

Jones's Complaint will be dismissed without prejudice as a shotgun pleading. If he chooses to file an amended complaint, Jones must sign and date the amended complaint after the following statement on the form:

> Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further

> investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Before signing the amended complaint, Jones must ensure his assertions are truthful and he has not knowingly made false material declarations.[13] He must neither exaggerate nor distort the facts but instead must truthfully state the facts underlying his claims. Knowingly making a false material declaration in violation of 18 U.S.C. § 1623 is punishable by a fine, imprisonment, or both. An amended complaint supersedes the filing of the initial complaint and becomes the operative pleading. Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1202 (11th Cir. 2011). Thus, Jones's amended complaint must be complete, including all related claims he wishes to raise, and must not refer to his original complaint.

---

[13] Section VIII of the Civil Rights Complaint Form, labeled "Previous Lawsuits," prompts an inmate to detail his litigation history related to prison conditions. See Complaint at 26. In completing the form in this case, Jones denied having ever "filed other lawsuits in state or federal court . . . relating to the conditions of [his] imprisonment." Id. at 26-27. This representation is untrue. When Jones initiated this action, he had filed at least one other civil rights case in the Northern District of Florida. See Case No. 3:21-cv-3414-MCR-ZCB (N.D. Fla). He even omitted mention of the complaint he filed simultaneously with this one. See Case No. 3:23-cv-925-BJD-PDB. As Jones has been advised, an inmate's obligation to ensure his assertions are truthful extends to those related to his litigation history. See Orders (Docs. 4, 6), Case No. 3:23-cv-925-BJD-PDB.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. Jones's Complaint (Doc. 1) is hereby **DISMISSED without prejudice** to his right to refile an amended complaint consistent with this Order.

2. If Jones wishes to file an amended complaint, he must do so on or before **May 13, 2024**. This case number should be affixed to the Civil Rights Complaint Form, and the words "Amended Complaint" should be written at the top of the form. Jones's failure to timely file an amended complaint or to correct the deficiencies noted here may result in the dismissal of this action without further notice.

3. The **Clerk** shall send Jones a blank Civil Rights Complaint Form.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of April, 2024.

MARCIA MORALES HOWARD
United States District Judge

Jax-6
c: Corian Jones, #455651